SYBIL MANSFIELD BATEMAN v. ELIZABETH CITY STATE COLLEGE, TRAVELERS INSURANCE COMPANY AND U. S. F. & G. COMPANY

No. 691IC139

(Filed 18 June 1969)

**State § 8— tort claim proceeding — contributory negligence of person injured**

In a proceeding under the Tort Claims Act to recover for injuries sustained by plaintiff in a collision between a pickup truck operated by her and an automobile operated by an employee of a State agency, evidence and findings of fact of the Industrial Commission are sufficient to support the conclusion that plaintiff was contributorily negligent in making a left turn from her lane of travel on a highway without first ascertaining that defendant's automobile was in the left lane of the highway attempting to overtake and to pass the truck.

APPEAL by plaintiff from Order of North Carolina Industrial Commission of 16 September 1968.

This is a proceeding under the Tort Claims Act. G.S. 143-291, *et seq.* Plaintiff on 4 October 1967 filed an affidavit asserting a claim for personal injuries sustained as a result of an alleged negligent act by an agent of the State while acting within the scope of his agency. The defendant, Elizabeth City State College (College), an agency of the State, filed answer admitting the agency and that on the occasion in question one of its professors, Leslye Napoleon Stallworth, was operating a 1962 Chevrolet station wagon within the course and scope of his employment. All acts of negligence were denied and contributory negligence on the part of the plaintiff was alleged.

The case was heard by Deputy Commissioner Delbridge who made findings of fact and conclusions of law and entered an order denying the plaintiff's claim. From this order, the plaintiff appealed to the Full Commission for a review. The Full Commission adopted

as its own, the findings and order of Deputy Commissioner Delbridge, with Commissioner Marshall dissenting.

The pertinent findings were:

"1. Plaintiff is a white married female, age thirty-three, and resides at Route 3, Hertford, North Carolina. She is a housewife and also assists her husband in his farming operations. That the accident giving rise to this claim occurred in Perquimans County at or near Woodville on Highway 17 about five-tenths of a mile south of Woodville on October 16, 1965, at about 9:30 a.m.

2. That the state owned vehicle, a 1962 Chevrolet station wagon, involved herein was operated at the time by Leslye Napoleon Stallworth, an employee of the Elizabeth City State College, Elizabeth City, North Carolina, an agency of the State of North Carolina, and that said employee was acting at the time within the course and scope of his employment.

3. On October 16, 1965, the plaintiff was operating her husband's 1963 Chevrolet pickup truck in a southwardly direction on Highway 17 at the place above indicated. Plaintiff was carrying some grain to a pasture where her husband was working. As the plaintiff approached the entrance to the pasture which was on the east on the left side of the road, she looked in her rear view mirror and observed a blue Falcon behind her also proceeding south.

There was no northbound traffic approaching. Plaintiff saw no other traffic. When she was three hundred to a hundred fifty feet from the entrance to the pasture, she put on her left signal light indicating she was going to make a left turn.

She noticed that the car following her had slowed down. When the plaintiff reached the entrance to the pasture she made her left turn into the pasture and as her front end crossed onto the left shoulder, her pickup truck was struck on its left side behind the door by the defendant's vehicle. Plaintiff never saw the defendant's vehicle prior to the collision nor did she hear a horn or any other warning signal.

4. Visibility was good for over five hundred feet. The road was straight, dry, and the weather was clear. The road at the point of impact was twenty-four feet wide and was eight feet shoulder.

5. The defendant's vehicle was headed south on U. S. High-

way 17 at the place heretofore indicated. The defendant driver came around the curve and saw up ahead of him some five hundred feet or more two vehicles, the Falcon and in front of that a pickup truck.

These two vehicles were travelling at a slower rate of speed than the defendant's vehicle which was going at a rate of approximately fifty or fifty-five miles per hour. As the defendant driver approached the Falcon he tooted his horn and proceeded to pass. After passing the Falcon, he started to pull in between the Falcon and the pickup truck which was operated by the plaintiff, but noticed that the pickup was travelling at a slow rate of speed, and, therefore, he continued in his left lane. As he approached the rear of the pickup truck, he tooted his horn and as the front end of his car was near the rear of the pickup truck, it turned and crossed the left lane in front of his car.

Defendant driver applied his brakes and was unable to stop in time to avoid a collision. The front of the defendant's vehicle struck the left side of the pickup truck knocking it into a ditch on the left side of the road. Both vehicles ended up on the left shoulder of the road. The defendant driver did not see any left turn signal light or arm signal on the plaintiff's vehicle.

. . . .

7. Miss Sherry Creamer (now Mrs. Fields) was driving the Falcon car above referred to. Said Falcon was following the plaintiff's pickup truck about two or three car lengths. Miss Creamer saw the left signal on the pickup truck about three hundred feet before the truck turned left across the highway. Miss Creamer saw the defendant's 1962 Chevrolet station wagon following her and it came up and did not take long to pass her car. As the station wagon approached and passed her car, she heard no horn. Miss Creamer saw the plaintiff make the left turn as the defendant's vehicle was attempting to pass and made the remark to a passenger in the car, 'They are going to hit,' and about this time the two cars collided.

. . . .

10. The defendant driver failed to see that his intended movement could be made in safety and failed to give an audible signal of sufficiency to warn the plaintiff of his intention to pass.

11. Plaintiff failed to observe the vehicle of the defendant even though it was a clear day and there was no obstruction and that she failed to see that her movement into the left lane of travel could be made in safety."

The Commission entered conclusions of law as follows:

"1.   The defendant driver was negligent in that he failed to keep his vehicle under control; that he failed to see that his intended movement could be made in safety; that he failed to give an audible signal of his intention to pass and did not act as a reasonable prudent man would have acted under the same or similar circumstances. G.S. 143-291 et seq. G.S. 20-149.

2.   Plaintiff was contributorily negligent in that she turned from a direct lane of travel without first ascertaining that such movement could be made in safety; that she failed to see the overtaking car of the defendant. G.S. 143-291 et seq. G.S. 20-154(a)."

Thereupon an order denying the claim was entered.

*John T. Chaffin for plaintiff appellant.*

*Aydlett & White by Gerald F. White for Elizabeth City State College, defendant appellee.*

CAMPBELL, J.

The question presented to this Court is whether the evidence supports the findings of fact made by the Commission, and if so, whether those findings of fact support the conclusions of law and order entered. The statute, G.S. 143-293, provides in appeals from the Commission

". . . Such appeal shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. . . ."

The evidence on behalf of the plaintiff tends to show that about 9:30 a.m. on 16 October 1965, plaintiff was driving a 1963 Chevrolet pickup truck in a southerly direction on U. S. Highway No. 17 in Perquimans County and about one-half mile south of Woodville. The pickup truck was loaded with oats which the plaintiff was taking from her home to a field where her husband and two minor sons were working. The plaintiff drove from her home along the road leading to Highway No. 17. On arriving at Highway No. 17 she stopped, and after observing that she could enter Highway No. 17 in safety, she proceeded to do so. This was at a point on Highway No. 17 at the termination of a curve on said highway. The pasture gate, which the

plaintiff intended to enter was located on the east side of Highway No. 17 at a point from 500 feet to a quarter of a mile south of where the plaintiff entered the highway. As plaintiff approached the gate, she observed in the rear view mirror located on the side of the pickup truck, a Falcon automobile being operated by a Mrs. Fields behind the pickup truck. There was no northbound traffic on the highway. Plaintiff, when she was at least 300 feet from the entrance to the pasture, turned on her left signal light indicating she was going to make a left turn. Plaintiff noticed the Falcon automobile behind her had slowed down, and when she reached the entrance to the pasture, she made her left turn. As the front end of the pickup truck crossed onto the left shoulder of the highway, the pickup truck was struck on the left side behind the door by the defendant's station wagon. Plaintiff testified that she never saw the station wagon at all. She testified "(i)t was not in view of my mirror." And she did not know what had hit her until after the accident. She testified that it was a clear day and the sun was shining and that there was nothing to obstruct her vision. The plaintiff's husband testified that the highway was perfectly straight for over a quarter of a mile from the direction in which the station wagon was coming, and that there was nothing on the highway to obscure the view.

Mrs. Fields, the driver of the blue Falcon automobile behind the pickup truck of the plaintiff, testified that when the plaintiff started to make her left turn across the left side of the highway, the station wagon at that time was in the left lane starting to pass the pickup truck, and as the pickup truck continued with the left turn, the station wagon struck it on the left side.

At no time did the plaintiff look to her rear before making her left turn. She testified that she only looked in the mirror located on the side of her truck and saw only what the mirror revealed.

The evidence supports the findings of fact made by the Commission and those findings of fact support the conclusions of law.

Affirmed.

MORRIS and PARKER, JJ., concur.